**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**


**UNITED STATES OF AMERICA,**

**vs.**                                                        **CASE NO. 1:01CR19-MMP/AK**

**WILLIAM (BILLY) R. DEVINE,**

　　　**Defendant.**

_____/


## REPORT AND RECOMMENDATION


　　　This cause is before the court for consideration of the motion of the Defendant, William (Billy) R. Devine, to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  Doc. 39.  The Government has filed its response, Doc. 46, and Defendant has filed his traverse.  Doc. 59.

　　　In his motion to vacate, Defendant charges that his attorney rendered ineffective assistance of counsel, that his guilty plea was not knowingly and intelligently made, that he was denied his right to appeal his sentence, and that the government has impeded his access to this Court.  In reviewing this matter, the Court determined that it needed additional information regarding Defendant's ineffective assistance of counsel claim

related to the issue of appeal, and thus, the Court directed Defendant to file an affidavit "which alleges **specific facts** as to [his] conversations with his attorney regarding an appeal, what was said, when it was said, and what transpired during the conversations." Doc. 62 (emphasis in original).  Defendant complied with the Court directions, Doc. 67, and thus this matter is now in a posture for decision.

Having carefully considered the matter, the Court recommends that the motion to vacate be denied in its entirety.

## BACKGROUND

On May 22, 2001, the Defendant, William (Billy) R. Devine, was indicted for being a prior convicted felon in possession of firearms (Counts One and Three) and for possessing, concealing, and storing a stolen firearm (Count Two).  Doc. 10.  On July 10, 2001, Defendant appeared before the Court for what the Court believed would be guilty pleas to all counts.  Although Defendant readily pled guilty to Count One, when the Court asked Defendant how he pled to Count Two, Defendant responded, "I don't understand."  Doc. 44, p. 3.  After consultation with his client, counsel for Defendant, Honorable Thomas Miller, advised the Court: "Your Honor, we have unfortunately wasted the Court's time this afternoon.  Mr. Devine enters a plea of not guilty, apparently, to Count Two."  *Id.* at 4.  Apparently, Defendant was confused about the interstate commerce component of the count.  *Id.*  Under the circumstances, the Court adjourned the proceedings to allow the parties to "fall back and regroup."  *Id.*

Three days later, Defendant appeared again before the Court to enter his plea of guilty as to all counts in the indictment.  On that occasion, Mr. Miller advised the Court as follows:

> Since the last court appearance, I've met with Mr. Devine for a period of
> time. I've gone back over all the paperwork again and explained to him in
> essence the legal definition of what was meant in Count Two. And I think
> we have–it may have been a matter of semantics, but we have bridged the
> gap, so to speak, and Mr. Devine is prepared to go forward....

Doc. 45, p. 3. Defendant then pled guilty to all three counts in the indictment. *Id.* at 4-5.

Before accepting Defendant's guilty pleas, however, the Court entered into a dialogue

with Defendant to "determine that [his] decision to plead guilty is freely and voluntarily

made, and that there is a factual basis to support [his] guilty plea." *Id.* at 5.

Towards that end, Defendant, after being sworn, and the Court engaged in the

following exchange:

| | |
|---|---|
| THE COURT: | And have you ever been treated for any mental illness? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | When was that? |
| THE DEFENDANT: | Well, I still am being. It's called posttraumatic stress syndrome. In other words, in plain English, panic attacks. And I'm still under psychiatric care for that, sir. |
| THE COURT: | And where do you receive that care? |
| THE DEFENDANT: | Shands, in the psychiatric unit on the second floor. |
| THE COURT: | And is this posttraumatic stress disorder linked to the military, or what? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | And do you receive your treatment or counseling for this disorder under the V.A., or what? |

THE DEFENDANT:          No, sir.  I go under Military Tri-Care.  I'm V.A. connected, but I won't go there.

THE COURT:              And how actively do you participate in counselings or any type of sessions?

THE DEFENDANT:          Monthly, sir.

THE COURT:              And do you receive any –

THE DEFENDANT:          Excuse me.  Plus medications.

THE COURT:              That was my next line.  Do you receive any type of medications for this?

THE DEFENDANT:          Every day, sir.

THE COURT:              What is the medication you take?

THE DEFENDANT:          200 milligrams of Zoloft in the morning, one milligram of Klonopin three times a day.

* * *

THE COURT:              All right.

THE DEFENDANT:          And then they give me Vioxx as a pain management medicine.  It's not really as a pain medicine, but pain management, because I have DDS in my spine.

THE COURT:              Any other medications?

THE DEFENDANT:          I take a lot of antacids and stuff for my ulcers and all the other internal problems.

THE COURT:              Any other prescription medications than the ones you have told me about?

THE DEFENDANT:          I don't believe so at the present time, sir.  They have had me on all these various stomach medications, but none of them ever worked so I don't take them very long.

THE COURT:          And while you were incarcerated, are you still taking these medications?

THE DEFENDANT:      I'm getting part of it, sir.

THE COURT:          And this posttraumatic stress disorder that you have described to me, does it interfere with your ability to understand what's going on about you –

THE DEFENDANT:      No, sir.

THE COURT:          – think rationally, and make rational decisions?
THE DEFENDANT:      No, sir.

THE COURT:          The medications that have been prescribed to you, the Zoloft, the Klonopin, I believe you said a Vioxx or something.  I tried to write it down.

THE DEFENDANT:      It's called Vioxx.

* * *

THE COURT:          And the Vioxx, as well as any antacids.  Do any of these medications that you currently take in any way interfere with your ability to understand what's going on around you, to comprehend your actions, and to appreciate the consequences of your actions?

THE DEFENDANT:      Not that I'm aware of, sir.

THE COURT:          All right.  And as you stand before the Court this morning, are you under the influence of any drug, narcotic, or alcoholic beverage?

THE DEFENDANT:      None, other than what I've told you, sir.

THE COURT:          And have you taken any drug or narcotic or consumed any alcoholic beverage within the last 24 hours?

THE DEFENDANT:      No, sir.

THE COURT:          Just the ones you have told me?

THE DEFENDANT:          Yes, sir.

*Id.* at 9-12.

The Court further advised Defendant that a "plea of guilty...does admit the truth of the...charges brought against you, while a plea of not guilty denies those charges." *Id.* at 13.  Defendant acknowledged that he understood the difference between a plea of guilty and a plea of not guilty.  *Id.*

The Court then addressed the effect of Defendant's guilty pleas on any possible defenses to the charges:

> It may be, Mr. Devine, you have some defenses to these charges.  Now, I do not know that you have any defense; I'm not telling you that you have any defense.  What I am telling you, though, is that by pleading guilty you give up any defense whatsoever that you may have.  So, knowing that you are giving up any defense that you may have by pleading guilty, do you still wish to plead guilty?

*Id.* at 14.  To this, Defendant replied, "Yes, sir."  *Id.*

With regard to the issue of appeal, the Court advised Defendant:  "[I]f your guilty plea is accepted by the Court...you waive, that is, you give up, your right to appeal all matters that relate to the judgment and the sentence to be imposed by this Court as well as the issue of your guilt or innocence."  *Id.*  In response to the Court's inquiry, Defendant acknowledged that he "still wish[ed] to plead guilty" even "knowing that [he was] giving up [his] right to appeal...except as to an illegally imposed sentence or the failure of this Court to properly apply the sentencing guidelines...."  *Id.*; *see also id.* at 19.

The Government then placed on the record the facts that it was prepared to prove at trial.  In pertinent part, the factual predicate outlined by the Government was as

follows: A complainant, Clyde Davis, reported to law enforcement officers that his revolver had been stolen from his vehicle which was parked at his home. *Id.* at 15. Davis suspected that Defendant had committed the theft because Defendant knew where Davis kept the revolver. *Id.* Davis also advised law enforcement officers that he had previously given Defendant a shotgun and had observed Defendant purchase several firearms. *Id.* at 15-16.

According to the Government, after receiving Davis' complaint, deputies from the Levy County Sheriff's Office went to Defendant's residence, and though Defendant denied any knowledge of Davis' stolen firearm, he admitted to possessing a shotgun which he surrendered. *Id.* at 16. The deputies arrested Defendant, and upon entering Defendant's home, the deputies observed and seized two handguns. *Id.*

Later, having secured a search warrant, deputies searched Defendant's residence and found Davis' firearm under the mattress of a bed. *Id.* They also discovered eight other firearms in a closet. *Id.* After being Mirandized, Defendant admitted stealing Davis' revolver and to owning the guns found in the closet. *Id.*

The Government delineated Defendant's prior felony convictions as convictions for fraud, aggravated assault, battery on a law enforcement officer, scheming to defraud, obtaining goods by fraudulent credit card, forgery, grand theft, and obtaining property by false impersonation. *Id.* at 16-17.

Defendant agreed that the facts recited by the Government were "true and correct." *Id.* at 18.

The Court then turned its attention to the written plea agreement and the statement of facts. At that time, the Court specifically asked Defendant, who

acknowledged his signatures on the documents, if he understood the terms and

conditions of the plea agreement and if the statement of facts was true and correct.  *Id.*

at 20-21.  Defendant answered both questions in the affirmative.  *Id.* at 21.

The Court then ascertained that Defendant had discussed the plea agreement

with his attorney and that his attorney had satisfactorily explained all the terms and

conditions of the agreement to him and that he was entering his guilty plea voluntarily.

*Id.* at 23-24.  More specifically, the following dialogue between Defendant and the Court

occurred:

| | |
|---|---|
| THE COURT: | And has anyone made any promise to you, Mr. Devine, other than those which are set forth in the written plea agreement, that has in any way induced you or led you to plead guilty to these charges? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | Does that written plea agreement in fact contain all of the promises and all of the understandings that you have reached with the government and based upon the terms of which you are entering your guilty plea here this morning? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Are there any secret or any undisclosed promises or inducements that have led you to plead guilty to this charge? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | By that, Mr. Devine, I mean, either you lawyer, the government, or any other person has told you anything or promised you anything that is |

contrary to the written terms of this plea agreement, or is in addition to the written terms
of this plea agreement, that has induced you in any way to plead guilty.

THE DEFENDANT:      No, sir.

THE COURT:      Has anyone used any type of threat, force, pressure, intimidation of any type to make you plead guilty?

THE DEFENDANT:      No, sir.

*Id.*

The Court then questioned Defendant regarding the services of his counsel:

THE COURT:      Now, you are represented in these proceedings by Mr. Miller, and he is in fact in court with you this morning.  Now, have you had sufficient time to discuss your case fully with your lawyer, and explained to him everything you know about the facts in the case and your involvement in it?

THE DEFENDANT:      Yes, sir.

THE COURT:      And have you done so?

THE DEFENDANT:      Yes, sir.

THE COURT:      During the conferences with your lawyer, has he generally answered what questions you may have, and has he explained to you where he may think you would fall within the sentencing guidelines based upon his current knowledge of the facts of the case as well as any prior criminal history that you may have?

THE DEFENDANT:      Yes, sir.

THE COURT:      And are you satisfied with your lawyer and the way that he has represented you in this case?

THE DEFENDANT:      Yes, sir.

THE COURT:      Do you have any complaint whatsoever about the way that Mr. Miller or anyone from the office of the Federal Public Defender has represented you?

THE DEFENDANT:          No, sir.

*Id.* at 24-25.

After questioning Defendant, the Court accepted Defendant's guilty plea,

concluding:

> The Court now finds you, William R. Devine or Billy R. Devine, to be
> alert and intelligent, that you do understand the nature of the charges
> against you and you do appreciate the consequences of pleading guilty.  I
> find also the facts the government is prepared to prove and the facts that
> you have admitted and stated under oath in open court to be true and
> correct are sufficient to sustain your guilty plea.  I further find that your
> decision to plead guilty is freely, voluntarily, and intelligently made, and
> that you have had the advice and counsel of a competent lawyer with
> whom you say you are well pleased.

*Id.* at 25-26.

On September 25, 2001, Defendant appeared with counsel for sentencing.  At

that time, the Court adjudged Defendant guilty on all three counts.  Doc. 43, p. 2.  The

Court then questioned Defendant and his counsel:

| THE COURT: | Mr. Devine, have you had the opportunity to read and have you in fact read the written presentence report that was prepared in your case? |
|---|---|
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | And have you discussed the contents of that written report with your lawyer? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Mr. Miller, after yourself reviewing the report and discussing its contents with your client, are there now any factual matters that are contained therein to which you take exception? |
| MR. MILLER: | No, Your Honor. |

| THE COURT: | Then do you, your client, or anyone on his behalf wish at this time to present any matters to this court relevant to sentence to be imposed? |
|---|---|
| MR. MILLER: | Your Honor, briefly, highlight to the court that Mr. Devine's possession of these firearms were not possession with any intent to use in an offensive manner.  Mr. Devine knows firearms.  He saw what he felt was a good deal on the purchase of them that he could eventually sell at a profit, and unfortunately, Mr. Devine bought them, and as he candidly told me, he put the cart before the horse.  He had intended to get his firearms rights restored, but he bought the g |
| THE COURT: | Does your client wish to make a statement? |
| THE DEFENDANT: | All I can tell you, Your Honor, is I'm very sorry, and if I had any idea it would have led to taking me away from my family...I wouldn't have bought a gun if they'd sold it for a nickel apiece. |

*Id.* at 2-4.

The Court then sentenced Defendant to a term of 110 months with three years of

supervised release on each count to run concurrently and a special assessment of

$300.00.  *Id.* at 6-7.  In concluding, the Court advised Defendant of his appeal rights:

| THE COURT: | Mr. Devine, you have no right to appeal this judgment.  You gave it up at the time you pled guilty, except to an illegally imposed sentence or the failure of this court to properly apply the guidelines. |
|---|---|
| | Any appeal to which you may be entitled, you must exercise your right of appeal within ten days of today's date.  If you do not file your notice of appeal within ten days of today's date, you lose your right to ever appeal. |
| | If it is your desire to appeal and you do not have the money with which to prosecute |

> your own appeal, I would consider the appointment of a lawyer to represent you.  But do you understand, sir, you have ten days to file any appeal to which you are entitled to appeal?
>
> He's shaking his head.

THE DEFENDANT:          Yes, sir.

THE COURT:              Mr. Miller, do you have any objections to anything transpired at this sentencing hearing or any objections outstanding to which I have not addressed myself?

MR. MILLER:             No objections at all.  All issues have been addressed by the court.

*Id.* at 7.

Judgment was entered on September 26, 2001, Doc. 25, and Defendant did not appeal his sentence.

## DISCUSSION

I.      Ineffective assistance of counsel.

In Defendant's first ground for relief, he charges that his attorney, in a variety of ways, rendered ineffective assistance.  Though each allegation of ineffectiveness will be considered in turn, a general discussion of the standards governing ineffective assistance claims is appropriate at this juncture.  That task involves a consideration of *Strickland v. Washington*, 466 U.S. 668 (1984).

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to

carry his burden of proof on either the performance or the prejudice prong. *Id.* at 697. The Court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The Court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001).

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id.* Additionally,

prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable.  *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, the cases in which a defendant can properly prevail on an ineffective assistance of counsel claim "are few and far between."  *Chandler*, 218 F.3d at 1313 (11th Cir. 2000).  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).  "The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler,* 218 F.3d at 1313.  "[O]missions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Id.* (citation omitted).

A.     Failure to inform Court of Defendant's incompetence.

Defendant first charges that his attorney allowed him to be adjudicated guilty while he was incompetent and that counsel failed to bring his incompetency to the Court's attention or to request a competency determination.  Doc. 39.  In support of these allegations, Defendant submits his affidavit in which he avers that he told Mr. Miller that he had a history of psychiatric problems and that he requested that Mr. Miller obtain his psychiatric records.  *Id.*  He also maintains that he "was under the influence of prescription medication at [the] time of [his] plea and sentence.  (Zoloft, [K]lonopin, and Viox[x] possibly in excess of prescribed amounts)."  *Id.*  He does not maintain that he

was unable to understand the nature of the firearms charges against him or that he did not understand any part of the guilty plea or sentencing proceedings.

In response, the Government submitted the affidavit of Mr. Miller in which he states: "[D]uring my multiple meetings with my client, William Devine, I had no reason to believe that [he] was suffering from any mental disease or defect which rendered him incapable of understanding the charges against him, and the resulting consequences of pleading guilty."  Doc. 46, Attachment A.  Indeed, Mr. Miller opined that "any affirmative defense, such as psychological disorder...would have been frivolous," and that there were no facts warranting a request for a downward departure based on diminished capacity.  *Id.*  Furthermore, according to Mr. Miller, "the psychological records of Mr. Devine would not have provided proper mitigation of the current case...."  *Id.*

It is beyond dispute that the Due Process Clause of the United States Constitution prohibits the "guilty plea conviction of a person who is mentally incompetent."  *Sheley v. Singletary*, 955 F.2d 1434, 1437 (11th Cir. 1992).  The test for determining the competency of a criminal defendant is (1) whether the defendant had sufficient present ability to consult with his attorney with a reasonable degree of rational understanding, and (2) whether he had a rational and factual understanding of the proceedings against him.  *United States v. Nickels*, 324 F.3d 1250, 1252 (11th Cir. 2003).   It would thus be ineffective for an attorney to allow a defendant to plead guilty if the defendant was "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241(a).

Although it cannot be disputed that Defendant was under psychiatric treatment and was taking medications for his "panic disorder," these facts, which were thoroughly

explored by the Court at the plea hearing, do not determine Defendant's competency to plead guilty.  Rather, in determining Defendant's competency, the Court–and his attorney--must focus on Defendant's level of understanding and his ability to assist his counsel.  As Mr. Miller pointed out, during "multiple" consultations with his client, he never had any indication that Defendant did not understand the nature of the charges against him or the consequences of pleading guilty.  After reviewing the transcript of the plea hearing, this Court likewise has no hesitation in concluding that there is absolutely no evidence in the record to suggest that Defendant was incompetent at the time he pled guilty, and therefore, his counsel could not have been ineffective for failing to recognize any alleged incompetence and to act affirmatively thereon.  At the time of his plea, Defendant was coherent, answered the Court's questions unhesitatingly, volunteered information, and clearly informed the Court that neither his medical condition nor the medications he was taking for that condition interfered with his ability "to understand what's going on about [him]," to "think rationally," to "make rational decisions," to "comprehend [his] actions," or to "appreciate the consequences of [his] actions."  As Mr. Miller pointed out and the record confirms, there was no factual basis for pressing the Court for additional consideration of Defendant's mental health condition, either as a mitigating factor or as a defense.  *Strickland* absolutely does not require an attorney to file a motion or proffer a defense which, in the attorney's best estimation after investigation and reflection, is patently frivolous.  In short, Mr. Miller did not act in a deficient manner with regard to evaluating Defendant's competency to plead guilty, and thus, this ground for relief fails.

　　　　B.　　　Failure to advise or offer affirmative defenses.

Defendant charges generally that Mr. Miller "failed to advise [him] of and/or offer any affirmative defenses to the criminal allegations."  Doc. 39.  In his affidavit, Defendant more specifically avers (1) that he told counsel "to look into the search of [his] home" and (2) that he informed Mr. Miller of his "history with government informant Clyde Davis and the fact that Davis had set [him] up by placing guns in [his] residence." *Id.*  In his reply, he also asserts that he had a defense based on erroneous information from the state probation department that it was legal for him to have the firearms and on his alleged insanity.  Doc. 59.

In response to the motion, Mr. Miller states that he does "not engage in frivolous motion practice" and that in his opinion any affirmative defense, such as entrapment, "would have been frivolous...."  Doc. 46, Attachment A.

During the plea hearing, Defendant affirmed that he and Mr. Miller had discussed the case "fully."  He also agreed to the factual basis for the plea proffered by the Government, including the fact that he stole Davis' gun and that he owned the other guns found in the residence, and acknowledged that although he might have defenses to the charges in the indictment, he nevertheless wanted to plead guilty.  Based on the facts of this case, there was no factual or legal basis to challenge either of the searches of Defendant's home, to argue entrapment, or to assert an insanity defense, and thus, counsel did not act deficiently by failing to pursue frivolous defenses.  Even if Defendant had any defenses to the charges, he freely waived those defenses by pleading guilty, and thus, he was not prejudiced in any manner by counsel's actions.  This claim is therefore also meritless.

C.    Failure to advise of constitutional and statutory rights.

This claim is vague, but the Court assumes Defendant is complaining that Mr. Miller failed to advise him of the rights attendant to a guilty plea which are delineated in Fed. R. Crim. P. 11.  Even if counsel failed to review Defendant's rights with him, as Defendant suggests, he cannot show any prejudice thereby.  At Defendant's first appearances on the complaint and on the indictment, he was advised of the charges against him, the penalties he was facing on those charges, and his constitutional rights to a court-appointed attorney and to remain silent.  Docs. 3 & 12.  At the plea hearing, the Court again delineated those rights and outlined the other rights covered in Rule 11, including the rights to trial by jury and the to confrontation.  Defendant clearly advised the Court that he still wished to plead guilty "knowing that [he did] give up each of those rights by pleading guilty."  In this Court's view, Defendant cannot cross the hurdle of proving that he was prejudiced by counsel's alleged failure to advise him of these rights before the plea hearing when he was properly advised by the Court of these rights and Defendant subsequently waived them.  Furthermore, Defendant's suggestion in his reply that counsel was ineffective for failing to inform Defendant that he could not withdraw his guilty plea and for failing to object "when the Court failed to inform [him] of such as required by Rule 11," Doc. 59, is patently without merit.  Rule 11 does allow the withdrawal of a guilty plea under certain circumstances, *see* Fed. R. Crim. P. 11(d), but the Court is not required to tell Defendant of that fact.  *See* Fed. R. Crim. P. 11(b)(1). This claim of ineffectiveness must also fail.

        D.       Failure to object to Presentence Report.

In this claim, Defendant charges that counsel rendered ineffective assistance of counsel when he failed to "lodge proper objections" to the Presentence Report with

regard to his prior criminal history, the enhancement for the stolen firearm, the

enhancement for the number of firearms involved, and "other objections specified by

movant to counsel."  Doc. 39.  Defendant does not elaborate on what "proper objection"

counsel should have made with regard to his prior criminal history, and having reviewed

the calculations made by the probation officer, this Court does not identify any

objections of its own that counsel should have made in that regard.  As to the

enhancement for the stolen firearm, Defendant admitted to law enforcement after being

Mirandized that he did in fact steal the handgun from Mr. Davis; thus, the enhancement

was proper.  In Mr. Miller's opinion, any objection on the basis suggested by Defendant

would have been frivolous and could have resulted in the loss of the three points

credited for acceptance of responsibility.  Doc. 46, Attachment A.  Furthermore, the

indictment clearly charged Defendant with possession of twelve firearms, not two as

Defendant alleges.  This enhancement was also proper.  In short, counsel did not act

ineffectively in failing to object to any of these matters.

> E.      Failure to challenge indictment based on double jeopardy.

In this claim, Defendant alleges that Mr. Miller was ineffective for not challenging

his indictment for two separate counts of being a prior convicted felon in possession of

firearms when the possession was "continuing."  Doc. 39.  Defendant more specifically

explained his argument in his reply: When Defendant was arrested on March 20, 2001,

the officers seized three guns, but they knew there were other guns in the house

because Defendant told the officers about them.  In Defendant's view, the officers

should have seized the other guns at that time instead of securing a search warrant and

seizing the remaining guns three days later.  Thus, according to Defendant, when he

was arrested on March 20 for the first three guns (Count 1 of the Indictment), he "simultaneously and continually possessed the remaining firearms in [his] residence." Doc. 59.  The "remaining firearms" are the nine firearms underlying Count 3 of the indictment which were discovered during the search of Defendant's home on March 23, 2001, and included Mr. Davis' pistol.

In pertinent part, the Double Jeopardy Clause protects against multiple punishments for the same offense.  *United States v. Rivera*, 77 F.3d 1348 (11th Cir. 1996).  An indictment is multiplicitous, and thus violative of the Double Jeopardy Clause, if it charges a single offense in more than one count.  *United States v. Bonavia*, 927 F.2d 565, 568 (11th Cir. 1991).[1]  The simultaneous, undifferentiated possession of several weapons constitutes only one offense under 18 U.S.C. § 922(g).  *Bonavia*, 927 F.2d at 568; *United States v. Griekievicz*, 873 F.2d 253, 255 (11th Cir. 1989).  Generally, only one offense is charged under § 922(g) regardless of the number of firearms involved absent a showing that the firearms were stored or acquired at different times or places.  *Bonavia*, 927 F.2d at 568.  Thus, the government may treat each firearm which is not simultaneously received or possessed as separate units of prosecution.  *Id.* at 568-69.  The inquiry into whether an indictment charging firearms offenses is muliplicitous is "'fact-intensive, involving issues such as whether the guns were acquired at the same time, stored in the same place, and seized by the government in the same search.'" *United States v. Webber*, 255 F.3d 523, 527(8th Cir. 2001).

---

[1]*Bonavia* involved the application of 18 U.S.C. § 1202(a), which precluded a prior convicted felon from receiving, possessing, or transporting any firearm.  *Bonavia*, 927 F.2d at 567, 567 n.1.  Section 1202(a) was repealed in 1986, and subsumed within 18 U.S.C. § 922(g).  *Id.* at 567 n.1.

A defendant waives his right to challenge convictions arising from a multiplicitous indictment if the challenge is not made before trial pursuant to Fed. R. Crim. P. 12(b). *Grinkiewicz*, 873 F.2d at 255.  "He may, nonetheless, challenge his separate sentences for these convictions."  *Id.*  Thus, the failure of an attorney to challenge the indictment before a guilty plea or the sentence on appeal based on multiplicity could constitute ineffective assistance of counsel.

Here, however, there is no ineffective assistance of counsel since the indictment was not multiplicitous.  Count 1 charged Defendant with the possession of three firearms on March 20, 2001–one which he admitted to having and the other two which were in plain view when the officers escorted Defendant into his home and which Defendant admitted belonged to a friend.  The other nine firearms were discovered pursuant to a search warrant executed three days later on March 23, 2001, and included Mr. Davis' gun which logically had to have been acquired separately from the guns in Count 1, since Defendant admitted to stealing it.  Furthermore, for all practical purposes, Defendant is not being punished separately for any of the counts, since the terms of imprisonment and the subsequent periods of supervised release run concurrently, not consecutively.  This charge is without merit.

F.      Failure to investigate regarding allegedly stolen gun.

In this charge, Defendant maintains that Mr. Miller acted ineffectively when he failed to investigate "movant's assertions and defenses related to the possession of stolen gun...which was not stolen from Clyde Davis the alleged victim of theft."  Doc. 39. Defendant now maintains that he "did not steal the gun from Mr. Davis," Doc. 59 (emphasis in original), and he agreed "to sign the plea and Statement of Facts, not because of their truth, but simply to get the whole affair over with."  *Id.*

The law is well established that a "guilty plea means something.   It is not an invitation to a continuing litigation dialogue between a criminal defendant and the court." *Murray v. United States*, 145 F.3d 1249,  1254 (11th Cir. 1998).  In fact,

> the representations of the defendant, his lawyer, and the prosecutor at...a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*,  431 U.S. 63, 73-74 (1977).  Furthermore, "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  *Strickland,* 466 U.S. at 691.

After being Mirandized, Defendant readily admitted to law enforcement officers that he stole Davis' pistol "from the truck owned by Clyde Davis."  Doc. 46, Attachment A at Attachment 1.  He then confirmed the truth of that statement by signing the Statement of Facts, which included the statement that Defendant "admitted to taking Davis' revolver...."  Doc. 19.  He then signed the plea agreement which acknowledged

Clyde Davis as the "rightful owner" of the revolver, Doc. 20, and swore to the Court that the facts recited by the Government, including Defendant's admission to law enforcement regarding his "taking Davis's revolver," were "true and correct."  Doc. 45 at 17-18.

In the face of these circumstances, there was nothing for counsel to investigate regarding the true ownership of the gun.  Before Defendant was indicted in this Court, he had admitted to law enforcement that he stole Davis' gun from his truck, and he repeatedly reiterated the veracity of that statement.  Even now, Defendant admits to possessing Davis' firearm but alleges that "there is more to the story than meets the eye," Doc. 59, regarding Defendant's relationship with Mr. Davis.  Though he maintains that he did not steal Davis' gun, he offers nothing to suggest that he advised his attorney to the contrary and nothing concrete which credibly casts doubt on the sworn statements made by Defendant in open Court after consultation with his attorney.  This claim of ineffectiveness is likewise meritless.

G.     Failure to pursue withdrawal of guilty plea.

In this ground for relief, Defendant states that counsel failed to "properly pursue movant's withdraw[al] of guilty plea and/or properly object and preserve for review the District Court's abuse of discretion in not allowing movant to withdraw guilty plea."  Doc. 39.  In response, Mr. Miller asserts that he reviewed Defendant's file and found "no notes" regarding any request by Defendant to withdraw his plea and that he has no independent recollection of any conversation with Defendant in that vein.  Doc. 46, Attachment A.  In his reply, Defendant states that he "must face the reality that

counsel's word carries more credibility" and asks the Court to hold an evidentiary hearing to resolve this "swearing contest."  Doc. 59.

When the Court is faced with conflicting evidence such as where a defendant's word is pitted against that of his counsel, and the Court cannot conclusively determine the issue based on the record evidence, the Court must hold an evidentiary hearing, the Eleventh Circuit having specifically rejected a *per se* rule which "'credit[s] counsel in case of conflict.'"  *Gallego v. United States*, 174 F.3d 1196, 1198-99 (11th Cir. 1999). However, here, the Court is not faced with any conflicting evidence, as Defendant has not come forward with any evidence in any form to suggest that he had any conversation with his attorney regarding a possible withdrawal of his guilty plea. Indeed, at sentencing, the Court offered Defendant the opportunity to make a statement, and although he took the opportunity to apologize for what he had done, he never mentioned anything that would have led the Court, then or now, to believe that Defendant had even considered a withdrawal of his plea or discussed the same with his attorney.  Doc. 43 at 3-4.  Even now, he does not offer any grounds for a motion to withdraw his guilty plea.  *See United States v. Cesal*, 2004 WL 2663906, at *5 (11th Cir. Nov. 23, 2004) (defendant must show "'fair and just reason'" under totality of circumstances for withdrawal of plea before sentencing). As there is no evidence to support this claim of ineffectiveness, it should be denied.

    H. Failure to inform Defendant that searches and confession could be challenged.

Defendant next alleges that counsel rendered ineffective assistance when he failed to inform him that the searches of his home and his confession could be

challenged as unconstitutional.  Doc. 39.  Mr. Miller does not specifically address this

issue in his affidavit, but the Court assumes that his response is subsumed by his

avowal that he does not engage in frivolous motion practice.  Doc. 46, Attachment A.  In

his reply, Defendant elaborates on this allegation, arguing that "[t]o be sure, the

evidence seized and statements made on March 20, 2001, were vulnerable to an

effective campaign of pre-trial pleadings, i.e., motions to suppress for violation of 4th,

5th, and 6th Amendments."  Doc. 59.  He maintains that the "facts surrounding movant's

March 20th encounter with police...would cause any reasonably competent criminal

defense attorney to seek suppression of evidence and statements."  *Id.*  He does not,

however, explain what "facts" should have led counsel to request suppression of the

guns seized and his confession that he stole Davis' revolver, and having thoroughly

reviewed the facts to which Defendant agreed at his plea, the Court does not discern

anything which was improper about the searches or the confession.  The officers had a

complaint about a stolen weapon.  They went to Defendant's home, and he admitted to

having a gun, though not the stolen gun, and when the officers arrested Defendant and

escorted him back into his home so that he could dress–which was entirely proper for

them to do--they saw additional weapons in plain view.  Defendant was then

Mirandized, and he confessed to stealing Davis' gun.  With the confession in hand, the

officers certainly had probable cause for seeking a search warrant of Defendant's home.

Without some indication of how any of these agreed to facts led to a violation of any

constitutional right, there can be no ineffective assistance of counsel, and thus, the

claim fails.

       I.     Failure to investigate factors supporting downward departure.

In this ground, Defendant argues that counsel failed to investigate or research factors that would have supported a downward departure of his sentence.  Doc. 39. More specifically, Defendant maintains that his criminal history was "over-represented due to [his] diminished capacity in the past and during times of alleged instant offense" and that his military and war record should have mitigated his punishment.  *Id.*  In response, Mr. Miller states: "There was no argument made at sentencing for a downward departure based on 5K2.0 and/or 5K2.13 because there were no facts to support an argument under these guideline subsections....nor is it possible to collaterally attack prior convictions at this stage of the Federal proceedings."  Doc. 46, Attachment A.  In reply, Defendant maintains that the "bottom line is that movant's military history, and psychiatric condition–a direct result of service to this Country–should have been, but were not used as a basis for having justice tempered with some judicial understanding and mercy."  Doc. 59.

The Court has previously discussed the issues associated with Defendant's claim of incompetency; they need not be readdressed here, as they are without merit.  A departure from the Sentencing Guidelines is "justified only if the defendant had a characteristic which [takes] him out of the heartland of cases."  *United States v. Miller*, 146 F.3d 1281, 1285 (11th Cir. 1998).  A defendant's military record is "not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range."  U.S. Sentencing Guidelines Manual §5H1.11.  At sentencing, the Court was well aware of Defendant's military service, and counsel's failure specifically to address a factor which is not "ordinarily relevant" at sentencing was not deficient performance and certainly did not prejudice Defendant, as he was sentenced to the low end of the

Guidelines.  Furthermore, it would have been entirely improper for counsel to have sought any mitigation based on Defendant's past criminal history, as "a district court cannot ignore or discount for any purpose a prior conviction that has not been invalidated in a prior proceeding, unless there was an unwaived absence of counsel in the proceedings resulting in that conviction."  *United States v. Phillips*, 120 F.3d 227, 231 (11th Cir. 1997).  In this case, Defendant was represented by counsel on each of his adult criminal convictions.  Thus, counsel could not have rendered ineffective assistance for failing to request something which the Court was prohibited from granting.  This claim is without merit.

II.      Guilty plea not knowing and voluntary.

In this ground, Defendant charges that because of his counsel's ineffectiveness and his own incompetence, his guilty plea was not "knowing, intelligent, and voluntary." Doc. 39.  The Court has thoroughly explored this ground in the previous section of this Report and Recommendation, and further review is not warranted.  In short, the Court does not believe that counsel rendered ineffective assistance in any manner or that Defendant was incompetent when he pled guilty to the firearms charges, and thus, this claim is meritless.

III.     Denial of right to appeal.

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the United States Supreme Court reiterated the applicability of the two-prong *Strickland v. Washington* test for analyzing a claim of ineffective assistance of counsel in the context of a failure to file a notice of appeal.  As to the performance prong, the Court stated that it has long been the law "that a lawyer who disregards specific instructions from the defendant to file a notice of

appeal acts in a manner that is professionally unreasonable." *Flores-Ortega*, 528 U.S. at 477. "This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice." *Id*. Counsel's failure to follow the defendant's specific instructions to appeal "cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." *Id*.

"At the other end of the spectrum, a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id*. at 477 (emphasis in original). If the defendant did not clearly convey his wishes one way or the other after counsel "consulted" with the defendant about an appeal, *i.e.*, counsel advised the defendant "about the advantages and disadvantages of taking an appeal, and [made] a reasonable effort to discover the defendant's wishes," counsel performs unreasonably only by disregarding the defendant's express instructions to appeal. *Id*. at 478.

In this case, it cannot be disputed that counsel and Defendant "consulted" about an appeal. According to Defendant, he is certain that this conversation took place immediately after sentencing:

> [I]mmediately after I was sentenced to a total of 110 months imprisonment, I turned to Mr. Miller and asked him if I could appeal the case. In response Mr. Miller advised affirmatively; however, added that "He did not believe it would do any good."
> I informed Mr. Miller to file an appeal in spite of his opinion that such action would be futile. In response, Mr. Miller assured me that he would file the necessary documents to affect appeal process.

Doc. 67. Although Mr. Miller is now uncertain whether he and Defendant actually talked about an appeal, Doc. 46, Attachment A, when he corresponded with Defendant in late

2002, slightly over a year after sentencing, Mr. Miller did recall a prior discussion with Defendant regarding an appeal:   "[T]here was no appeal filed, after sentencing, because we discussed the topic and I advised that you received a legal sentence, and there were no issues to appeal.  You agreed, and did not direct me to file an appeal." *Id.* at Attachment 5.

There is, however, a dispute about the outcome of this consultation, but in this Court's view, Defendant has not carried his burden of proving by a preponderance of the evidence that he clearly expressed to his attorney his desire to appeal.  *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (Defendant must prove claim that counsel rendered ineffective assistance of counsel by preponderance of evidence; Civ. Pattern Jury Instruct. 6.1 (11th Cir. 2000) ("A 'preponderance of the evidence' simply means an amount of evidence that is enough to persuade...that the [Defendant's] claim is more likely true than not true").  The Court bases this conclusion on unrefuted record evidence, thereby negating any requirement of an evidentiary hearing.

On September 27, 2001, counsel sent Defendant a letter enclosing a copy of the judgment which had been entered on the previous day.  Doc. 46, Ex. A at Attachment 6. In this correspondence, counsel does not mention an appeal or any prior discussion between him and Defendant regarding appeal.  This silence leads the Court to believe that counsel did not receive clear instructions from Defendant regarding an appeal, and that he was indeed under the impression that Defendant did not want to appeal.  As Mr. Miller previously explained in another case, the filing of a notice of appeal "requires no additional work on [his] part," as the notice is prepared by the

secretary, and the appeal is handled by another attorney in the Public Defender's office. *United States v. Davis*, Cause Number 1:96CR40-MMP/AK (N.D. Fla.) at Doc. 93. Furthermore, as Mr. Miller indicated on that occasion, it has been his practice during his time as a public defender to file an appeal whenever the client requests that he do so within the ten-day time period for appealing even if he does not agree with the client's decision. *Id.* at Doc. 107, 14-15. Though counsel does not reiterate his practice in the affidavit presented in this case, the Court has no reason to doubt that the testimony he gave under oath in the *Davis* case holds equally true in this case as well.

In addition to the letter from counsel, the Court has looked to Defendant's own affidavit as evidence that Defendant did not clearly convey his desire to appeal his sentence. According to Defendant's second affidavit, "on September 26, 2001 (may be, more accurately the 27th) I telephonically contacted Mr. Miller's office and was informed by a secretary that my case was completed and that Mr. Miller was no longer my attorney. Consequently, I did not speak with Mr. Miller regarding my appeal." Doc. 67. Even crediting Defendant's belief that he had clearly communicated his wishes to Mr. Miller, this conversation indicates that counsel and his staff were not operating under the same impression. There is absolutely no evidence that Defendant took any action, and Defendant's silence in the face of the secretary's statement is quite telling, indicating to the Court that even if counsel's failure to appreciate Defendant's position regarding an appeal was deficient performance, Defendant was not prejudiced under *Flores-Ortega*. Under the *Flores-Ortega* standard, the Defendant must show that the deficient performance caused the forfeiture of his appeal. *Flores-Ortega*, 528 U.S. at 484. In other words, he must demonstrate a reasonable probability that, but for

counsel's deficient performance, he would have timely appealed.  *Id.*  Defendant cannot

make this showing.  At the point where counsel's secretary informed Defendant that Mr.

Miller was no longer working on his case, if Defendant contemplated an appeal, he

should logically have asked for the name of the attorney handling his appeal or

contacted the Court or the Clerk's Office.  Defendant had plainly been advised by the

Court at sentencing of the deadlines for appealing and that the Court would appoint him

an attorney if he needed one.  As of September 27, there was still ample time for

contacting counsel or the Court regarding an appeal, the ten-day time for appeal having

only just begun to run, and yet, Defendant took no additional affirmative steps towards

appealing his sentence.  In fact, Defendant did not do anything until he filed the instant

motion to vacate over one year after he was sentenced.  In the opinion of the

undersigned, it was not counsel's alleged deficient performance which caused

Defendant not to appeal but rather Defendant's failure to act upon the information from

counsel's office that Mr. Miller was no longer representing him.

Accordingly, the Court recommends that this ground for relief be denied.

IV.    Denial of access to court.

In this ground, Defendant charges that he has been denied due process "due to

not having access to criminal files, transcripts of hearings and sentence, being deprived

paperwork in prison, transferred, locked down and unable to comprehend legal

complexities...."  Doc. 39.  This claim is patently without merit.  Mr. Miller provided

Defendant with is file, Doc. 46, Ex. A at Attachment 5, and the Government served

Defendant with copies of the transcripts in this case.  Doc. 51.  Defendant has more

than adequately presented his claims and his arguments, which the Court has

thoroughly considered.  In short, he has not been denied any access to this Court.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's

motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, Doc. 39,

be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this __5th__ day of January, 2005.




**s/ A. KORNBLUM**
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.