**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**UNITED STATES OF AMERICA,**

**vs.**                                                                    **CASE NO. 1:01CR19-MMP/AK**

**WILLIAM (BILLY) R. DEVINE,**

   **DEFENDANT.**

                                              /

**SECOND REPORT AND RECOMMENDATION**

In January, 2005, the undersigned entered a Report and Recommendation recommending that all of Defendant's claims raised in his motion to vacate be denied. Doc. 70. The Court initially adopted the R&R, Doc. 71, but later vacated the adopting order to allow Defendant additional time to file objections. Doc. 73. After several additional extensions of time were granted, Defendant finally submitted his objections, Doc. 79, but the Court again denied the motion to vacate. Doc. 82. Defendant then moved for reconsideration, Docs. 83-85, which the Court also denied. Doc. 87.

Undeterred, Defendant filed a Rule 60(b) motion addressed only to the issue of "whether Counsel was ineffective for failing to file a Notice of Appeal." Doc. 89. Before the Court could rule on that motion, Defendant filed a notice of appeal directed to the denial of the motion to vacate and the denial of the motion for reconsideration. Doc. 92. In addressing the Rule 60(b) motion, the Court found that it had jurisdiction over the motion despite the notice of appeal, and

then remanded this § 2255 matter to the undersigned regarding one issue of ineffective assistance of counsel.  Doc. 95.  More specifically, the district judge remanded for an evidentiary hearing to determine

> (1) whether defendant's initial statement of his desire to appeal was sufficient to trigger the per se duty to appeal outlined in Flores-Ortega; and (2) if not, whether defendant's attorney fulfilled his constitutional duty to consult with his client and to make a reasonable effort to determine defendant's wishes, and whether he acted in accordance with those wishes.

*Id*. at 4.  These were the only questions to be addressed.  *Id*.

Pursuant to those instructions, the Court appointed counsel to represent Defendant and conducted an evidentiary hearing on April 21, 2006.  Doc. 102.  Before the Court could issue a second R&R, however, the Eleventh Circuit, finding that this Court "lacked jurisdiction to enter its March 8, 2006, order granted the petitioner's Fed. R. Civ. P. 60(b) motion to vacate the November 2, 2005, order denying his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence," remanded the appeal "to the district court with direction to vacate its March 8, 2006, order and enter a valid order disposing of the Rule 60(b) motion" and directed the appellate clerk to "close the file on appeal."  Doc. 112.  The district judge therefore vacated its Rule 60(b) order and dismissed the Rule 60(b) motion for lack of jurisdiction.  Doc. 113.  After consultation with the district judge's chambers, the undersigned shelved the evidentiary hearing materials and took no further action, believing this matter was before the Eleventh Circuit for decision.

On July 28, 2006, in response to appointed counsel's and Defendant's own motions for reconsideration, Docs. 117 and 118, the Court once again remanded this matter to the undersigned for preparation of a R&R, finding that "the Eleventh Circuit intended to provide this court with jurisdiction to entertain Defendant's original motion for reconsideration...when it closed Defendant's file on appeal."  Doc. 119.

This matter is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that this final issue of ineffective assistance of counsel be denied.

## **DISCUSSION**

1. Was Defendant's initial statement regarding an appeal sufficient to trigger the per se duty to appeal outlined in *Roe v. Flores-Ortega*?

According to Defendant's affidavit offered in support of the § 2255 motion, the following exchange occurred between Defendant and counsel immediately after sentencing:

> [I]mmediately after I was sentenced to a total of 110 months imprisonment, I turned to Mr. Miller and asked him if I could appeal the case. In response Mr. Miller advised affirmatively; however, added that "He did not believe it would do any good."
>
> I informed Mr. Miller to file an appeal in spite of his opinion that such action would be futile. In response, Mr. Miller assured me that he would file the necessary documents to affect appeal process.

Doc. 67. Although counsel did not recall actually talking to Defendant about an appeal, there were, in this Court's view, sufficient indicia both in the record and in counsel's testimony in another similar matter to lead to the conclusions that counsel and Defendant "had 'consulted' about an appeal," Doc. 70 at 28, but that Defendant had not carried his burden of proving by a preponderance of the evidence "that he clearly expressed to his attorney his desire to appeal." *Id*. at 29.

> At the hearing, Defendant's recollection was quite different:
>
> Only thing I remember that was ever said about an appeal is immediately after the appeal was over, I asked Mr. Miller as we were getting ready to walk out of the courtroom, I said, "Can I appeal this?"
>
> He said, "You can, but it won't do any good."
>
> And I said, "Well, appeal it anyway." And I was led away.

* * *

     There was nothing else said.

Doc. 111 at 5 & 11.  According to Defendant, the affidavit was "wrong," and counsel did not assure him that he would file the appeal.  *Id*. at 11.

     Defendant also testified that he called counsel's office the following day and told counsel's secretary that he was "'calling to see about Mr. Miller taking care of that [return of property] stuff and about what I asked him on the appeal.'"  *Id*. at 6.  According to Defendant, he heard counsel in the background direct his secretary to "[t]ell him I am no longer his attorney.  The...hearing is over.'"  *Id*. at 21.  Defendant stated that counsel never, to his knowledge, did "anything to assist [him] in getting [his] property back."  *Id*. at 14; *see also id*. at 5.  At no time thereafter did Defendant otherwise contact counsel regarding an appeal.  *Id*. at 14.

     Counsel testified as follows:

> I remember after sentencing Mr. Devine and I were at the podium and the question of appeal came up as one of the last things that Judge Paul advises an individual after sentencing.  And I recall telling Mr. Devine that because he pled guilty, the only issue to appeal would be the sentence imposed and that he received a legal sentence.
>
>                                 \* \* \*
>
> I don't recall a verbal response from Mr. Devine.  I believe that he either shrugged his shoulders or raised his eyebrows, some sort of physical acknowledgment that he had heard what I said, but I don't recall any words from Mr. Devine.

*Id*. at 32.  Although counsel did not speak further with Defendant, he was aware that Defendant had spoken with his secretary because "[t]here were ongoing conversations between my secretary and I regarding the return of Mr. Devine's property that was seized pursuant to a search of his house via search warrant."  *Id*. at 33.  Consistent with prior testimony before the

undersigned, counsel recognized that filing an appeal is "time critical, ten days or they've lost the right to ever appeal," *id*. at 36, and that when requested to file an appeal, his routine practice is to tell the secretary "to file a notice of appeal on so and so's case and that's it.  It's a one-page document that's in the word processor, just change the case number and the client's name."  *Id*. at 37.

Counsel further testified that he oftentimes monitors clients' cases post-sentencing "for a Rule 35 motion by the government" or takes care of "something that may be tangential to the case."  *Id*.  In Defendant's case, there was "another collateral matter...that was of ongoing concern...because it could impact his sentencing, that Mr. Devine was under the impression that he was no longer under probation in state court but, yet, he still had two outstanding violations of probation."  *Id*. at 37-38.  Thus, two days after sentencing, counsel sent the state attorney a copy of Defendant's federal judgment "suggesting and hoping that this sentence would be sufficient to dispose of the two pending violations of probation that were lodged against Mr. Devine."  *Id*. at 38.  As the Court pointed out in the original R&R, on that same date, counsel also sent Defendant a copy of the judgment, and in this correspondence, he did not mention an appeal or any prior discussion between him and Defendant regarding an appeal.  Doc. 70 at 29; *see also* Doc. 46 Exa. A at Attach. 6.

Several months after sentencing, counsel filed a response on Defendant's behalf to the Government's forfeiture request though it does not appear he sent a copy to his client.  Doc. 27.  According to counsel, he filed the response because the Government had included in its forfeiture motion "some items that were not firearms...that should be returned to Mr. Devine and not forfeited."  Doc. 111 at 40.

On cross-examination, counsel reiterated that his "best recollection is that after the topic of appeal came up, that I reminded him that he had pled guilty and that the only thing there would be to appeal would be an illegal sentence and he did not receive an illegal sentence." *Id*. at 44. He did not recall any "firm and definite waiver by Mr. Devine of his right to appeal," *id*. at 45, or specifically asking Defendant "'Do you or do you not want to file an appeal....'" *Id*. at 57.

Counsel's secretary, Pam Jones, also testified at the hearing. Ms. Jones recalled talking to Defendant "several times about some property that he wanted returned and also I talked to his wife about the property." *Id*. at 22. She had no recollection of Defendant's saying "anything about an appeal." *Id*. at 23. Ms. Jones recognized the importance of timely acting when a defendant contacts the office and requests an appeal, stating that she herself prepares the notice of appeal which she "usually" files "before the ten days is up" even if she has not had an opportunity to speak to Mr. Miller about the matter. *Id*. at 24. She testified that to her knowledge Mr. Miller had never ignored a request to file an appeal. *Id*. Ms. Jones further stated that although she had talked to Defendant's wife several times after the property was returned, she never told Ms. Jones that Defendant wanted an appeal filed and never inquired about the status of an appeal. *Id*. at 25-26. She also testified that Defendant never called to ask about the status of his appeal and that she did not receive anything from him about an appeal until some time in 2002. *Id*. at 26.

Having carefully considered the matter, the Court once more has no hesitation in finding that Defendant's alleged instructions to counsel to file a notice of appeal did not trigger the *per se* duty to appeal outlined in *Roe v. Flores-Ortega*. Quite frankly, the Court does not believe that

Defendant told counsel to appeal his sentence, or if he did, he did not do so in such a manner that counsel heard him. The Court finds it quite telling that Defendant, who allegedly told counsel to "appeal [the sentence] anyway," did nothing more regarding the appeal except, at most, mentioning it to the secretary on one occasion the day after sentencing. If Defendant was so certain that he had clearly conveyed to counsel his desire to appeal, when he received the letter from counsel which enclosed the judgment but was silent on the issue of appeal, he should have immediately contacted counsel, the Clerk of Court, or the chambers of the district judge to ask about his appeal. As both Mr. Miller and Ms. Jones testified, filing a notice of appeal is an routine task, and one which the Clerk of Court can perform on a defendant's behalf if directed to do so by the Court. The Court had plainly instructed Defendant about appeal deadlines at sentencing, and Defendant, who admitted several prior convictions for fraud, Doc. 111 at 18, is not a neophyte to the criminal justice system. The Court also does not find credible Defendant's testimony that counsel essentially washed his hands of this case, as it is plainly refuted by the record.

In short, the Court finds that the Defendant was not credible, and thus, his initial statement regarding an appeal was not sufficient to trigger the *per se* duty to appeal outlined in *Roe v. Flores-Ortega*.

>   2.   If not, did counsel fulfill his constitutional duty to consult with his client and to make a reasonable effort to determine defendant's wishes?

In the context of an appeal, the term "consult" conveys "a specific meaning–advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). "If counsel has consulted with the defendant, the question of deficient performance is easily

answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Flores-Ortega*, 528 U.S. at 478. If, however, counsel has not consulted with his client, the Court must determine "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id*. Thus, "[u]nder what circumstances does counsel have an obligation to consult with the defendant about an appeal?" *Id*.

There is no "bright-line rule that counsel must always consult with the defendant regarding an appeal." *Id*. at 480. Instead,

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id*. The Court must consider "all the information counsel knew or should have known," and though not determinative, "a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea," whether the defendant "received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id*.

At the hearing, both counsel and Defendant agreed that counsel advised Defendant that he had no grounds upon which to appeal the sentence. Counsel explained to the Court, without challenge from Defendant:

> If I recall, it was a very strong case against Mr. Devine. I know that one of the first things I do is look to attack the search warrant and that looked solid. Additionally, if I remember correct, in discovery I think there were some tape recorded conversations that Mr. Devine had with the Levy County Sheriff's Office that...were pretty much a confession or acknowledgment that he knew he had firearms and he was a convicted felon.

* * *

> I would have to say that in recalling Mr. Devine, because he was a very verbose client, that he called frequently, I would say a minimum of once, if not two or three times a week. I believe I probably visited with him personally at the jail at least a half a dozen times. I would say that would be a fair estimate of at least half a dozen face-to-face conversations and multiple telephone conversations.

Doc. 111 at 54-5. Counsel was therefore familiar with the issues of the case. *Id*. at 56.

On cross-examination, counsel candidly admitted that before sentencing, he did not have any conversation with Defendant "about issues that [he was] preserving for appeal or might be appealable, might make fodder for an appeal" since Defendant pled "straight up and there was no motion practice done where we would have asked the Court to preserve the denial of a motion for an appeal." *Id*. at 56-7. After sentencing, counsel also did not "affirmatively seek to ascertain [Defendant's] desire with regard to an appeal." *Id*. at 57.

Though Defendant was fully advised at the plea hearing that by pleading guilty, he waived his right to appeal any matter other than one related to an illegal sentence, Doc. 45 at 14 & 19; *see also* Doc. 20, at the evidentiary hearing, Defendant stated that he wanted to appeal "about pleading out on the psychotropic drugs. I didn't know if I fully understood my rights and what was going down because those medications mess up your mind." *Id*. at 8. The issue of Defendant's competence to plead guilty was fully explored in the original R&R and rejected as frivolous. Doc. 70 at 14-16. Raising incompetence earlier on appeal would likewise have been frivolous.

Furthermore, it cannot be disputed that counsel reviewed both the Plea Agreement and the Presentence Report with Defendant. *See* Doc. 43 at 2-4; Doc. 45 at 20-24; Doc. 111 at 7. Thus, going into the sentencing hearing, Defendant knew that under the Guidelines, he was looking at a sentence of 110-137 months imprisonment, that the Government would not

recommend any particular sentence, and that both he and the Government had the right to appeal any sentence imposed by the Court. *See* Doc. 20; Presentence Report. Thus, Defendant was not surprised at the imposition of the 110-month sentence, which was at the bottom of the Guidelines range.

Though the Court originally found that counsel and Defendant consulted about an appeal, it must now revise that original holding, counsel having candidly admitted that he did not discuss with Defendant the advantages and disadvantages of taking an appeal or make a reasonable effort to discover the defendant's wishes. The Court does not, however, believe that this failure to consult constituted deficient performance. While certainly the better practice is always to discuss the issue of appeal with one's client and pointedly determine whether he wants to appeal, the Supreme Court rejected such requirements, and in this case, the Court finds that counsel had no reason to think that a "rational defendant" would, in light of the circumstances, want to appeal since there were no nonfrivolous grounds for appeal or that instant Defendant had "reasonably demonstrated to counsel that he was interested in appealing." As previously discussed, the Court does not find Defendant's testimony that he directed counsel to "appeal...anyway" credible, in part because Defendant took no actions consistent with someone who had issued such explicit direction. When counsel did not acknowledge the directions to appeal, which is what Defendant's own testimony revealed at the hearing, any reasonable defendant would have followed up to make sure his attorney was carrying out his wishes. Thus, counsel did not violate any constitutional duty to consult with his client about an appeal.

## **CONCLUSION**

In response to the Court's questions, the undersigned finds: (1) that Defendant's initial statement regarding an appeal was not sufficient to trigger the *per se* duty to appeal outlined in *Roe v. Flores-Ortega*; and (2) that counsel did not act deficiently when he failed to consult with Defendant about an appeal. Therefore, it is respectfully **RECOMMENDED** that this final issue which was raised in the motion to vacate and remanded to the undersigned for evidentiary hearing should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this **26th** day of January, 2007.

s/ A. KORNBLUM
ALLAN KORNBLUM
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**